

**VA** | **U.S. Department of Veterans Affairs**
**Office of General Counsel**

Torts Law Group
810 Vermont Avenue, NW
Washington, DC 20420

Telephone: (202) 461-4900

In Reply Refer To: GCL# 478484

Via Certified Mail #7019 2280 0000 6144 3537

September 30, 2020

Franco Palazzo
6761 37th Ave. North
St. Petersburg, FL 33710

Re: Administrative Tort Claim

Dear Mr. Palazzo:

The Department of Veterans Affairs (VA) has thoroughly investigated the facts and circumstances surrounding your administrative tort claim. Our adjudication of your claim included a review of your medical records, a review of your claim by a medical reviewer in a different part of the country, and interview of medical personnel.

The Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b) and 2671-2680, under which you filed your claim, provides for monetary compensation when a Government employee, acting within the scope of employment, injures another by a negligent or wrongful act or omission. Medical negligence means there was a breach in the standard of care and that breach proximately caused an injury. The standard of care is the level at which similarly qualified medical professionals would have managed the care under the same or similar circumstances.

Our review concluded there was no negligent or wrongful act on the part of an employee of the Department of Veterans Affairs (VA) acting within the scope of employment that caused you compensable harm.

In addition, under the FTCA, a tort claim is barred unless it is presented within two years after the claim accrues, as provided in section 2401(b), title 28, United States Code. Your claim was received on September 24, 2020, more than 2 years after the claim accrued.

Accordingly, we deny this claim.

If you are dissatisfied with the denial of your claim, you may file suit directly under the FTCA, 28 U.S.C. §§ 1346(b) and 2671-2680. The FTCA provides that when an agency denies an administrative tort claim, the claimant may seek judicial relief in a Federal district court. The claimant must initiate the suit within six months of the mailing of this notice as shown by the date of this denial (28 U.S.C. § 2401(b)). In any lawsuit, the proper party defendant is the United States, not the Department of Veterans Affairs.

Please note that FTCA claims are governed by a combination of Federal and state laws. Some state laws may limit or bar a claim or lawsuit. VA attorneys handling FTCA claims work for the Federal government and cannot provide advice regarding the impact of state laws or state filing requirements.

Sincerely,

*Kristen Nelson*
Kristen Nelson
Deputy Chief Counsel

## AFFIDAVIT OF MAILING AND OF HAND DELIVERY OF
### Federal Tort Claims Act Form SF95-07a

To whom it may concern:

1. On July 14, 2020 I the undersigned, Frank Palazzo a/k/a Franco Isacco Palazzo, sent a document titled Federal Tort Claims Act Form SF95-07a, with attachments to Department of Veterans Affairs, Office of General Counsel, Torts Law Group, 140 Fountain Parkway, Suite 520, St. Petersburg, FL 33716, by United States Postal Certified Mail, USPS, with receipt providing Tracking # EJ406789401US, with scheduled delivery date Wednesday, 7/15/2020 12:00 PM, which I confirmed from the postal service online tracking report revealed was timely delivered before noon the following day, a copy of the receipt is attached as Exhibit A.

2. On July 15, 2020 at approximately 9:15 AM I delivered by hand the document titled Federal Tort Claims Act Form SF95-07a, with attachments addressed to Administrator, C. W. Bill Young Veterans Administration Medical Center, Bay Pines, Florida 10000 Bay Pines Boulevard, Bay Pines, FL 33744, at the Office of the Director, into the hand of Bill Phillips who immediately took it to the inner office; the delivery witnessed by John Wayne McKenney, Colonel, USAF (Retired). See attached Exhibit B Affidavit of John Wayne McKenney, Colonel, USAF (Retired) dated 10/10/20 affirming his presence at time of such delivery.

Further Affiant sayeth not.

_____
Frank Palazzo a/k/a Franco Isacco Palazzo

Date: 03/27/21

**FLORIDA INDIVIDUAL ACKNOWLEDGMENT**
F.S. 117.05(13)

State of Florida
County of Pinellas

The foregoing instrument was acknowledged before me by means of

☒ Physical Presence,

— OR —

☐ Online Notarization,

this 27 day of March, 2021, by
    Date         Month          Year

Franco I Palazzo
Name of Person Acknowledging

_____
Signature of Notary Public — State of Florida

Marsela Mile
Name of Notary Typed, Printed or Stamped

☐ Personally known
☒ Produced Identification

Type of Identification Produced: FL DL

P420-249-42-099-0

MARSELA MILE
Notary Public - State of Florida
Commission # GG 355163
My Comm. Expires Jul 15, 2023

Place Notary Seal Stamp Above

———— OPTIONAL ————

Completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.

**Description of Attached Document**

Title or Type of Document: Affidavit of mailing and of hand delivery of Federal Tort Claims Act form SF95-07a
Document Date: 03/27/2021          Number of Pages: 1 +2
Signer(s) Other Than Named Above: No other signers

©2020 National Notary Association

M1304-11 (11/20)

```
================================
          SAINT PETERSBURG
           3135 1ST AVE N
      SAINT PETERSBURG, FL 33730-9998
              118263-0700
             (800)275-8777
          07/14/2020 06:26 PM
================================

Product              Qty    Unit      Price
                            Price
--------------------------------------------
PM Exp 1-Day          1    $26.35    $26.35
Flat Rate Env
  Domestic
  SAINT PETERSBURG, FL  33716
  Flat Rate
  Signature Requested
  Scheduled Delivery Day
  Wednesday 07/15/2020 12:00 PM
  Money Back Guarantee
  USPS Tracking #
  EJ406789401US
PM Exp Insurance                      $0.00
  Up to $100.00 included
--------------------------------------------
Total:                               $26.35
--------------------------------------------

Debit Card Remit'd                   $26.35
  Card Name:VISA
  Account #:XXXXXXXXXXXX0742
  Approval #
  Transaction #:313
  Receipt #:033519
  Debit Card Purchase:$26.35
  Cash Back:$0.00
  AID:A0000000980840
  AL:US DEBIT                         Chip
  PIN:Verified

*******************************************
  Due to limited transportation
  availability as a result of
  nationwide COVID-19 impacts
  package delivery times may be
  extended. Priority Mail Express®
    service will not change.
*******************************************

Includes up to $100 insurance

In a hurry? Self-service kiosks offer
quick and easy check-out. Any Retail
Associate can show you how.

Save this receipt as evidence of
insurance. For information on filing
an in    nce claim go to
https        usps.com/help/claims.htm

Text your tracking number to 28777
(2USPS) to get the latest status.
Standard Message and Data rates may
apply. You may also visit www.usps.com
USPS Tracking or call 1-800-222-1811.
```

EXHIBIT "A"

## AFFIDAVIT

To whom it may concern:

I John Wayne Mckenney, Colonel, USAF (Retired) accompanied and was present with Franco I. Palazzo a/k/a Frank Palazzo when he provided a Federal Tort Claims Act complaint to the Office of the Director of the Bay Pines Veterans Administration Medical Center, Bay Pines, Florida on July 15, 2020 at approximately 9:15 A.M.

Further affiant sayeth not.

_____
John-Wayne Mckenney, Colonel, USAF (Retired)

Date: 10/10/20

STATE OF FLORIDA
COUNTY OF PINELLAS

BEFORE ME PERSONALLY APPEARED JOHN WAYNE MCKENNEY THIS 10TH DAY OF OCTOBER 2020.

_____
Donna J Hayden, Notary



DONNA J HAYDEN
MY COMMISSION # GG076946
EXPIRES March 07, 2021

EXHIBIT "B"

Supplementary Page 4 to Complaint - Franco I. Palazzo v. United States of America 3/29/21

III.   On January 31, 2018, I, Plaintiff, Franco I. Palazzo had bladder cancer removed at the Veterans Administration Medical Center, Bay Pines, FL (VA) and had a Prostate Specific Antigen (PSA) reading of 9.5 which was trending upward. The Preoperative diagnosis was benign prostate hypertrophy (BPH), hematuria, possible bladder stones, and partial urinary retention. The Post-Operative Diagnosis was BPH, bladder cancer, partial retention. On February 18, 2018 Plaintiff was hospitalized for hydronephrosis (Acute Kidney Failure/Acute Kidney Injury) (AKI) due to obstruction of urine stemming from an enlarged prostate. 4000 CC of urine were initially drained. History reveals that on October 17, 2017 Plaintiff had a PSA of approx. 8.5. His February 12, 2018 visit to the urology clinic revealed that urine flow was diminished yet further than had been the case prior to the bladder procedure of January 31, 2018.

On February 18, 2018 Plaintiff presented himself to the emergency room of the VA Bay Pines Florida Medical Center at which time it was discovered his bladder was distended, 4000 cc of urine was drained, and he was then admitted to the Veteran's Administration Medical Center Hospital, Bay Pines, FL.

The following day, February 19, 2018, Dr. William LaRosa Jr. the urologist made a progress note entry in which he noted that Plaintiff had previously declined to have a prostate surgical procedure and further noted that Plaintiff had previously declined to have a prostate biopsy; and cleared him for discharge by the urology department. Reference was made in the record by Dr. LaRosa on February 19, 2018 asking if Plaintiff "was willing to consider prostate <u>surgery at present</u>" which was declined, however, importantly, no such offer of whether Plaintiff was willing

to consider prostate <u>biopsy at present</u> was made, even considering that an Acute Kidney Injury had just occurred the previous day, and that the enlarged prostate most likely had resulted in the Acute Kidney Injury (AKI); but instead the only reference to a prostate biopsy is in the historical portion of the progress note of February 19, 2018. This historical note is a carry-forward cut-and-paste of the language used in Dr. LaRosa's Consult Requests notes January 31, 2018. The following day the kidneys having returned to an acceptable level of function Plaintiff was discharged with a Foley catheter to allow urination and healing of the bladder. Thereupon, Plaintiff relied upon the medical judgment of the urologist and other treating physicians that notwithstanding the elevated PSA compounded by the events resulting in an Acute Kidney Injury that Plaintiff was safe to be discharged without any further testing of any kind including an updated PSA, a biopsy, an MRI, an nMRI, or any other chemical test. Plaintiff was merely discharged to await his follow up visit on May 15, 2018 and then again May 21, 2018 at which time no mention was made of PSA results dated May 8, 2018 revealing the PSA had sky rocketed to a point of 21.27 well over double the previous PSA reading of 9.5 January 30, 2018 only three months before. At the very moment when a biopsy and PSA were most needed they were not offered and the elevated PSA, presumably a potential indication of cancer that having reached the point of accelerating rapidly with possible metastasis, was allowed to skyrocket. No warning was offered and no action was taken.

From 2017 forward, Plaintiff experienced PSA levels, an indicator of potential prostate cancer showing a more rapid upward trend than before, that by January, 2018 had reached 9.5. On February 18, 2018 notwithstanding a prostate symptomatic to the point that was obstructed to a level which resulted in AKF/AKI due to the possible presence of rapidly growing cancer within the prostate; no

biopsy, PSA, or other diagnostic measure was taken notwithstanding this acute event resulting in hospitalization.

Multiple medical visits to the urology department followed after this point, but Plaintiff was not offered a biopsy, PSA, or other diagnostic measure.

On May 9, 2018 William LaRosa, Jr. MD entered an addendum noting that Plaintiff had visited the Emergency Department May 6, 2018 for hematuria relating to the bladder, also mentioning, "pt. has declined prostate surgery in the past, turp and bx." There was a further entry of a PSA of 21.27 dated May 8, 2018. However, no mention was made of offering a prostate <u>biopsy at present</u>, and that Plaintiff was expected in the urology clinic on May 15, 2018.

On May 15, 2018 Plaintiff presented himself to the urology clinic at Bay Pines Hospital for a scheduled visit. He was unaware it would include a cystoscopy that day which he declined, and it was rescheduled six days later for May 21, 2018. Dr. LaRosa's notes stated in part, "Impression-BPH with urinary retention and patient has declined prostate surgery in the past, bladder cancers, gross hematuria, infections as is not unexpected doing self-catheterization." He made no mention of offering a prostate <u>biopsy at present</u>. Most importantly, he made no mention of the PSA results reported May 8, 2018 which had more than doubled skyrocketing to 21.27.

On May 21, 2018 Plaintiff presented himself to the urology clinic at Bay Pines Hospital for a scheduled visit and Dr. LaRosa performed a cystoscopy and reported, "Post Operative Diagnosis: Negative Cystourethroscopy except bph". … "Follow up: cysto in 4 months pt would like Lofric cathters (sic) or self contained caths to help him. He still declines turp" Once again, he made no mention of offering a prostate <u>biopsy at present</u>. Most importantly, he made no mention of the

PSA results reported May 8, 2018 that had more than doubled skyrocketing to 21.27.

Inexplicably in that Plaintiff had a history of having previously declined offers of a prostate biopsy; when on February 18, 2018 symptoms became intolerable having resulted in an Acute Kidney Injury and the requirement for a catheter to allow urination, no prostate biopsy or other test such as a PSA or other test was offered to allow a determination of whether some previously dormant, slow growing form of prostate cancer had reached a level that it would quickly develop to a point where it would metastasize and spread throughout the body; and as if this failure to act was insufficient, when alarming PSA results of 21.27 returned three months later, the results were not reported to him, nor in any way acted upon to control what it then should have appeared were strong indications of a rapidly growing cancer subject to metastasis.

It was not until two months later, July 15, 2018, that Plaintiff presented himself to the VA Emergency Department because of pain to his lower abdomen at which time it was discovered within 24 hours that there was in fact strong evidence indicating the possibility of the presence of prostate cancer and that this had apparently metastasized throughout his entire body from neck to feet and to his other extremities as well.

It was only then that Dr. LaRosa entered an ADDENDUM dated 07/16/2018 stating: "[[note that pt has declined prostate surger/procedures in the past but with these findings pt needs to consider at minimum a prostate bx. will make f/u appt to discuss further these things with him to see if he will allow bx prostate]]". Inexplicably the events of February 18, 2018, and each of those that followed until July 15, 2018, had not been sufficient for Dr. LaRosa to conclude: "…will make f/u appt to discuss further these things with him to see if he will allow bx prostate".

The conclusion by the VA was metastatic bone cancer Stage Four, Gleason Rating Nine, PSA 33.

The VA failed to provide the standard of care which would prevent the onset of prostate cancer, and if prostate cancer was present the VA failed to provide the standard of care required to prevent metastasis.

The conduct described provides contributing acts to such failure.